# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **ARVILLA STINSON, as next friend of K.R., a minor** | § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § § | **CIVIL ACTION NO: 2:15-924-WKW-SRW** |
| **MONTGOMERY COUNTY BOARD OF EDUCATION, TRAMENE MAYE in his individual and official capacities, and RAFIQ VAUGHN in his individual and official capacities** | § § § § § § § § | |
| | § | **JURY TRIAL DEMANDED** |
| | § § | |
| **Defendants.** | § | |

## SECOND AMENDED COMPLAINT

## JURISDICTION

This is an action at law pursuant to Title IX (20 U.S.C. § 1681), in addition to claims under Alabama State Law.

Accordingly, the jurisdiction of this Court is invoked under 28 U.S.C. § 1331, § 1332, and §1343(a)(3); 28 U.S.C. § 1367.

## PARTIES

1. Plaintiff Arvilla Stinson is an adult resident of Montgomery County, Alabama.  She is the mother and next friend of K.R., a minor who sustained injuries as discussed herein.

2. Defendant Montgomery County Board of Education ("MCBOE") is a school district organized and existing under the laws of Alabama with offices located in Montgomery, Alabama.

3. At all material times, Defendant Tramene Maye was an employee of MCBOE acting in the scope of his employment.  He is sued in his official capacity and his individual capacity.

4. At all material times, Defendant Rafiq Vaughn was an employee of MCBOE acting in the scope of his employment as the principal at Southlawn Middle School.  Vaughn was and is the highest-ranking school official at Southlawn Middle, and is the first line of responsibility for ensuring that the students in his school are safe.  He is sued in his individual capacity and his official capacity.

## MCBOE POLICIES

5.      The   MCBOE   Handbook[1]   ("Handbook")   contains   grievance
        procedures for discrimination, including Title IX, ADA, Title VI, and
        Section 504.  Handbook at 47.

6.      The Handbook mandates an "informal but thorough" investigation of
        any Title IX violations.

7.      The Grievance Procedures in the Handbook only address complaints
        by parents, guardians, third parties, and/or students against MCBOE
        employees.  Handbook at 47.

8.      There is no policy in the Handbook for addressing Title IX grievances
        relating to student-on-student harassment.

9.       The  Handbook  does  contain  a  section  regarding  bullying  and
        harassment among students.  See Section VII of Handbook, p. 43.

10.     "Harassment"  includes,  but  is  not  limited  to,  subjecting  another
        student to physical contact.  Handbook at 43.

---

[1] Plaintiff does not have a copy of the handbook that was in effect at the time of the acts complained of in this lawsuit.  The allegations regarding the handbook that are set forth herein are taken from the 2015-2016 handbook that is available online.  Upon information and belief, the policies will be similar, if not identical, to the policies in the 2014-2015 handbook.  If necessary, Plaintiff will amend this complaint to comport to the 2014-2015 handbook upon receipt of same after initial disclosures in this case.

11.   "Sexual harassment" includes unwelcome touching or other inappropriate physical acts of a sexual nature toward a student in school.

12.   The Handbook states that any teacher or school staff who witnesses or receives reports regarding acts of bullying or harassment should promptly notify the school principal or his/her designated staff. Handbook at 44.

13.   Any bullying or harassment should be documented on a Bullying/Harassment Complaint Form and that form must be mailed or personally delivered to the principal or his/her designee.  Handbook at 44.

14.   The principal or his/her designee is required to accept and investigate all reports of harassment or bullying.

15.   The principal or his/her designee is required to notify the parent or guardian of a student who commits a verified act of harassment or bullying of the response of the school staff  and consequences of the verified act and/or the consequences that may result from further acts of bullying.  Handbook at 44.

16.   The Handbook mandates that except for good cause shown, the investigation must be completed not more than five business days

after the administrator or designated investigator receives notice of the complaint.  Handbook at 44.

17.   The Handbook mandates that the principal or designated investigator must make a written report to the Chief Academic Officer upon completion of the investigation.   The report shall include a determination of whether or not the allegations are factual, whether or not there has been a policy violation, and proposed discipline, if any. Handbook at 44-45.

18.   The school administrator investigating the report must make every effort to notify the parents or guardians of the complainant and the individuals against whom the complaint was filed prior to beginning the investigation.  Handbook at 45.

19.   The Handbook lays out consequences for bullying or harassing behavior.   Verified acts of bullying or harassment shall result in disciplinary action and/or corrective action reasonably calculated to end the identified conduct, deter future conduct, and protect the complainant and other similarly situated individuals.   In imposing disciplinary measures, the district shall take into account the harm suffered by the victim and other members of the school community and any damage to school property.  Handbook at 45.

20.    Discipline should comply with the *Code of Student Behavior*. Handbook at 46.

21.    The *Code of Student Behavior* categorizes forcible rape as "Sexual Battery," which is a Class D offense punishable by Proposal for Due Process/Expulsion.  See Handbook at 36.

## PRIOR TITLE IX VIOLATIONS COMMITTED BY RAFIQ VAUGHN

22.    During the 2013-2014 school year, a teacher named DeAndre Hill was employed at Southlawn Middle School.

23.    Upon information and belief, Hill sexually harassed a number of his female students at Southlawn Middle[2], creating a hostile environment under Title IX.

24.    Upon information and belief, a number of parents complained about the inappropriate conduct of Mr. Hill to Principal Rafiq Vaughn, who represented that he would "investigate" the complaints.

25.    Upon information and belief, Mr. Vaughn did not investigate these incidents or otherwise take any action because Mr. Hill was a former fraternity brother of his.

---

[2] Mr. Hill would rub certain students' backs in an inappropriate manner or make inappropriate remarks.  On one occasion, he asked a student who had worn a dress to school that day to sit on the front row and to open her legs.  Upon information and belief, Vaughn was notified of these incidents and took no action.

26.   Upon information and belief, parents began checking their children out of school prior to Mr. Hill's class due to the harassment, thus depriving those students of their right to learn under Title IX.

27.   Upon information and belief, Mr. Vaughn was aware that these students were leaving school early to avoid Mr. Hill's class, but he took no action against Mr. Hill.  On one occasion, he told a concerned parent that there was nothing he could do about the situation.

28.   According to a report from Fox 10 News, Mr. Hill was arrested in April 2014 for indecent exposure charges stemming from an incident where he showed a picture of his penis to one of his students at Southlawn Middle.  He was thereafter terminated.

29.   Mr. Hill was rehired to teach middle school in South Alabama, where he was arrested in 2015 for having sexual contact with a student.

## **THE GANG RAPE OF K.R.**

30.   Plaintiff K.R. is a minor.  At all relevant times, she was a student at Southlawn Middle School in Montgomery, Alabama.

31.   Defendant Maye, at all relevant times, was the assistant principal at Southlawn Middle School.

32.   Defendant Vaughn, at all relevant times, was the principal at Southlawn Middle School.

**33.** On or about October 23, 2014, K.R. was walking off of the Southlawn Middle School campus at the end of the school day when a group of three boys grabbed her and dragged her into an abandoned building on the perimeter of the school property.

**34.** K.R.'s stepsister, who had been walking with her, alerted Defendant Maye to the conduct.

**35.** Rather than intervene on K.R.'s behalf, Maye told K.R.'s stepsister to "go on about her business" and did not take any other action.

**36.** Maye witnessed the three boys grabbing and dragging K.R.  The conduct Maye witnessed met the Handbook definition of bullying, harassment, and sexual harassment.

**37.** Maye did not report the conduct to Principal Vaughn.

**38.** K.R. was thereafter gang raped by two of the boys while the third boy kept a lookout.

**39.** Plaintiff Arvilla Stinson was soon notified about the incident.  Stinson was already at Southlawn Middle that day, participating in a parent-teacher meeting with some of K.R.'s teachers regarding her classroom performance.

**40.** Stinson immediately reported to Principal Vaughn's office to discuss the gang rape.

41. Maye and another coach whose name is not currently known were also present at the meeting.

42. During the meeting, Principal Vaughn exhibited little concern for K.R. and instead pleaded with Stinson to refrain from calling the media.

43. Principal Vaughn also told K.R. that she needed to "love her body."

44. Principal Vaughn also made a remark that K.R. had more of an adult body similar to Vaughn's girlfriend's body.

45. Principal Vaughn called local police, who deemed the rape "consensual sex" and took no further action.

46. Stinson thereafter took K.R. to Baptist East Hospital for further treatment.

47. Recognizing that K.R. had clearly been raped, Baptist East personnel called the police and notified Child Protective Services and DHR.

48. After completing all necessary examinations and reports, K.R. fell into a deep depression.

49. K.R. received psychological treatment as the result of the gang rape.

50. K.R. missed approximately 7-8 days of school as the result of the gang rape.

51. During this period, K.R. did not want to leave the house.

52.   Neither Principal Vaughn nor anyone else from Southlawn Middle or the Board reached out to K.R. during her absence from school.

53.   The Board did not offer counseling to K.R. or take any other steps to assist her in dealing with her grief after the gang rape.

54.   Upon information and belief, Principal Vaughn completed no reports concerning the rape, did no investigation regarding the rape, and took no further action regarding K.R.'s gang rape.

55.   K.R. was not given notice of Title IX or her right to make a grievance regarding the gang rape.

56.   K.R. was not advised of the grievance procedures available to her.

57.   Approximately one week into K.R.'s absence from school, Stinson went to Southlawn Middle to give K.R.'s doctor's excuse and to get K.R.'s schoolwork.  Stinson spoke with Principal Vaughn regarding K.R.'s distress.   Vaughn advised that Stinson should probably not allow K.R. return to Southlawn Middle under the circumstances because all the students were saying that the three boys had "run a train" on K.R.

58.   Since Stinson had already moved her family out of the school district earlier in the school year, Stinson was able to transfer K.R. into a different school within the MCBOE system.

59.    K.R. thereafter had to deal with the stress of starting a new school in the middle of the school year.

60.    Word of the gang rape traveled to her new school through social media.  Students have teased K.R. about the incident, causing her to lash out violently.

61.    Upon information and belief, neither Principal Vaughn nor any other administrative designee did any sort of report or investigation regarding the gang rape.

62.    Upon information and belief, no legal or disciplinary action was taken against the three boys who gang raped K.R.

63.    Upon information and belief, the three boys continued to attend Southlawn Middle without repercussion.

64.    Upon information and belief, MCBOE did not change any of its policies or provide any additional training to staff after the incident complained of herein.

65.    K.R. continues to take medication and receive treatment for mental health trauma subsequent to her gang rape and the Defendants' deliberate indifference thereto.

66.     K.R.'s grades have dropped and her social life has declined as a result of being gang raped and the Defendants' deliberate indifference thereto.

67.     K.R. is reluctant to leave her house as the result of being gang raped and the Defendants' deliberate indifference thereto.

68.     K.R. has had violent outbursts toward her younger siblings since being gang raped and the Defendants' deliberate indifference thereto.

69.     The actions and inaction of MCBOE interfered with K.R.'s ability to attend school and perform her studies and activities and indeed caused her to cease attending Southlawn Middle School due to the threatening, humiliating, abusive, unsafe and hostile environment.

70.     MCBOE's failure to act on K.R.'s complaints, despite actual knowledge thereof, was a result of actual intent to discriminate against her on the basis of sex.

71.      K.R. left behind her friends and life at Southlawn Middle after attending the school since 6th grade.  She therefore missed out on her 8th Grade Graduation, which caused her great sadness and distress. Her new school did not have a graduation ceremony.

72.   MCBOE's failure to act to remedy the harassment suffered by K.R. has deprived her of access to educational opportunities at Southlawn Middle in violation of Title IX.

### COUNT I-TITLE IX (20 U.S.C. § 1681 ET SEQ.) AGAINST MCBOE

73.   Title IX liability arises when a school district official is an appropriate person with the authority to take corrective measures in response to sufficient, actual notice of student-on-student sexual harassment responds thereto with deliberate indifference and unreasonably in light of the known circumstances.

74.   As the Eleventh Circuit has recognized, a school entity may be liable under Title IX when the school entity is deliberately indifferent in response to a single incident of student sexual harassment.  *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1296-1297 (11th Cir. 2007); *Hill v. Cundiff*, 797 F.3d 948, 973-974 (11th Cir. 2015).

75.   Principal Vaughn, as principal of Southlawn Middle, is high enough on the chain of command to impute liability to MCBOE for purposes of Title X liability.

76.   Vaughn is the highest ranking school official at Southlawn Middle who is present every day and he is the first line of responsibility for ensuring that the students in his school are safe.  As such, he is an

"appropriate person" under Title IX.  *See Hill v. Cundiff*, 797 F.3d 948, 971 (11th Cir. 2015) (where all parties stipulated that principal and assistant principal of school were "appropriate persons" under Title IX).

77. Principal Rafiq Vaughn was on actual notice of K.R.'s gang rape.

78. Principal Vaughn had the authority to initiate corrective action in response to K.R. being gang raped.

79. Rafiq Vaughn acted with deliberate indifference to his actual notice of K.R.'s gang rape inasmuch as Vaughn acted unreasonably in light of the known circumstances.

80. K.R. was deprived of educational opportunities enjoyed by her male colleagues—the right to attend public school on a daily basis without the fear, embarrassment, intimidation, physical and psychological injury associated with sexual assault.

81. Defendants are liable under Title IX for failure to implement policies and procedures to ensure compliance with Title IX; including, but not limited to, a failure to have a specific policy for addressing student-on-student grievances under Title IX framework.   See <u>Davis v. Monroe County,</u> 526 U.S. 629, 647 (1999).

82. Defendants are liable under Title IX for failing to make grievance procedures, including where complaints may be filed, known and available to the Plaintiff.

83. Defendants are liable under Title IX for failing to process the complaints of sexual assault and rape alleged by K.R. as mandated by Title IX.

84. Defendants are liable under Title IX for failing to notify K.R. that her complaints of sexual assault and rape were covered under Title IX and that she was afforded protection thereunder.

85. Defendants are liable under Title IX for their failure to properly investigate K.R.'s allegations of sexual assault and gang rape.

86. Defendants are liable under Title IX for their failure to impose disciplinary measures or take remedial action against the individuals who raped K.R.

87. Defendants are liable under Title IX for their failure to reach a timely outcome of the investigation (because there was *no* investigation) and their subsequent failure to make Plaintiff aware of said outcome.

88. Defendants, through Vaughn, violated Title IX by making statements regarding K.R.'s body and how she should "love her body" after she was gang raped.

89.   Due to Defendants' negligent, reckless and/or wanton breach of the duty they owed to K.R. pursuant to 20 U.S.C. § 1681, K.R. never returned to Southlawn Middle School.  She has missed weeks of school and countless hours of instructional time dealing with the debilitating aftermath of her sexual harassment, sexual assault, and gang rape due to the actions and inactions of Defendants.

**COUNT II:   NEGLIGENCE/WANTONNESS**
**AGAINST TRAMENE MAYE IN HIS INDIVIDUAL AND**
**OFFICIAL CAPACITY**

90.   Each of the paragraphs of this Complaint is incorporated as if fully restated herein.

91.   Standing *in loco parentis*, Maye owed a duty to K.R. to act in a reasonably prudent manner when executing his duties as an employee of Southlawn Middle to supervise students who pose a real and immediate danger to their fellow students and to protect students from harassment, intimidation, and sexual assault.

92.   Maye does not have immunity from civil liability in his individual capacity.  As the Alabama Supreme Court has routinely held:

> "'Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United

States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.' ''

*Ex parte Butts,* 775 So.2d at 177–78 (quoting *Ex parte Cranman,* 792 So.2d 392, 405 (Ala.2000)).

93.    Maye violated MCBOE policy by failing to report the harassment he witnessed to Principal Vaughn and by failing to complete the required, non-discretionary forms for an incident of harassment as set forth in the Handbook.

94.    Maye acted negligently by failing to intervene when he saw K.R. being bullied and harassed by her three attackers.

95.    As a proximate cause of Maye's negligence/wantonness, K.R. was caused to suffer physical injury, severe emotional distress, embarrassment, humiliation, anxiety, and concern.

96.    Plaintiff seeks compensatory damages, punitive damages, costs, and any other relief available under Alabama law.

**COUNT III:    TORT OF OUTRAGE (INTENTIONAL/RECKLESS INFLICTION OF EMOTIONAL DISTRESS)**

## AGAINST RAFIQ VAUGHN IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES

97.   Each of the paragraphs of this Complaint is incorporated as if fully restated herein.

98.   As alleged *supra*, Defendants' conduct was intentional and/or reckless, extreme and outrageous and utterly intolerable in a civilized society.

99.   Particularly, Vaughn's conduct in telling K.R.--a middle school-aged student at the school where he was the principal--that she should "love her body" and that she had an adult body that was similar to his girlfriend, is disgusting, outrageous, and disturbing.

100.   As a direct result of Defendant's conduct, Plaintiff has suffered emotional distress so severe that no reasonable person could be expected to endure it.

101.   Plaintiff seeks compensatory damages, punitive damages, costs, and any other relief available under Alabama law.

## PRAYER FOR RELIEF

Wherefore, K.R. requests that this Court provide the following relief:

a.   Declare the Defendants' conduct to be in violation of K.R.'s rights under federal and Alabama law;

b. Enter appropriate declaratory and injunctive relief against both MCBOE and Maye and Vaughn in their official capacities;

c. Award K.R. compensatory damages in an amount that will fully compensate her for the physical injuries, mental distress, anguish, pain, humiliation, embarrassment, suffering, and concern that she has suffered as a direct and proximate result of the statutory and common law violations set forth herein;

d. Enter a judgment against all Defendants for such punitive damages as will properly punish them for the constitutional, statutory, and common law violations perpetrated upon Plaintiff as alleged herein, in an amount that will serve as a deterrent to Defendants and others from engaging in similar conduct in the future;

e. Award K.R. with prejudgment and post-judgment interest at the highest rates allowed by law;

f. Award K.R. with costs, expert witness fees, and reasonable attorney's fees;

g.  Assume continuing and indefinite jurisdiction to insure compliance with the terms of the Orders requested herein;

h.  Award Plaintiff K.R. such other and further relief, including equitable, that this Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL STRUCK BY JURY.

Respectfully submitted, this the 11th day of September, 2017.

/s/Abbey Clarkson
**Abbey Clarkson (MAS038)**

/s/Andrew R. Salser
**Andrew R. Salser (SAL027)**

/s/Cameron L. Hogan
**Cameron L. Hogan (HOG010)**

**OF COUNSEL:**

**LLOYD & HOGAN**
**2871 ACTON ROAD**
**SUITE 201**
**BIRMINGHAM, AL 35243**
**(205) 969-6235**

## CERTIFICATE OF SERVICE

I hereby certify that this Second Amended Complaint has been served on all interested parties by e-filing same on September 11, 2017.

**/s/Abbey Clarkson**