IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ARVILLA STINSON, as next friend of K.R., a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 2:15-CV-924-WKW [WO] |
| MONTGOMERY COUNTY BOARD OF EDUCATION; TRAMENE MAYE, in his individual and official capacities; and RAFIQ VAUGHN, in his individual and official capacities, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

> Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. . . . In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education.

Chief Justice Earl Warren penned those words in 1954. *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954). They remain true in 2019. So year after year, for those reasons and more, parents across Alabama send their children to public school.

When parents send their children to school, they essentially delegate some of their parental authority to teachers and school administrators. There is a Latin phrase

for that concept: "*in loco parentis*," which translates "in the place of a parent." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654–56 (1995); *Smith v. Smith*, 922 So. 2d 94, 98 (Ala. 2005); 1 William Blackstone, *Commentaries* *453. But the power to act in the place of a parent comes with solemn responsibilities. Educators must educate students. They must also protect students.

At least that is how things should be. If the allegations in this case are true, Southlawn Middle School in Montgomery, Alabama, is a place where rape is not taken seriously.

K.R. was a student at Southlawn Middle when her fellow students allegedly gang-raped her. K.R.'s mother, Arvilla Stinson, filed this suit on K.R.'s behalf. According to Stinson's complaint, Assistant Principal Tramene Maye *saw* three boys drag K.R. into an abandoned building. The boys then raped K.R. But Maye ignored the incident and told K.R.'s stepsister to "go on about her business." When Principal Rafiq Vaughn learned about the rape later that day, he was allegedly more worried about bad press than he was about K.R. He also told K.R. to "love her body" and remarked that she looked like his girlfriend. K.R. eventually changed schools, but the three boys stayed at Southlawn Middle. They were never punished.

In her lawsuit, Stinson claims the Montgomery County Board of Education is liable under Title IX because it was deliberately indifferent to sexual harassment. Stinson also claims that Principal Vaughn and Assistant Principal Maye committed
2

common-law torts. All three Defendants moved to dismiss the Second Amended Complaint (Doc. # 33) for failure to state a claim (Docs. # 34, 36).

For the reasons below, the Board's motion to dismiss Stinson's Title IX claim is due to be granted. Title IX imposes a "rigorous and hard to meet" standard, *Hill v. Cundiff*, 797 F.3d 948, 975 (11th Cir. 2015), and despite the appalling allegations in Stinson's complaint, that standard is not met here. That leaves Stinson with her tort claims against Principal Vaughn and Assistant Principal Maye. Because those claims are based entirely on Alabama common law, the court determines that Stinson should pursue them in state court. This case is therefore due to be dismissed.

## I. JURISDICTION AND VENUE

The court has federal-question subject-matter jurisdiction over Stinson's Title IX claim. 28 U.S.C. §§ 1331, 1343(a). The court declines to exercise supplemental jurisdiction over her common-law claims. *Id*. § 1367(c). The parties do not contest personal jurisdiction. Venue is proper under 28 U.S.C. § 1391(b).

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a motion to dismiss, a court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  But a court need not accept mere legal conclusions as true. *Id.* at 1325.

### III.  FACTUAL ALLEGATIONS

Southlawn Middle School is a public school in Montgomery, Alabama, under the control of the Montgomery County Board of Education.  At all material times, Rafiq Vaughn was Southlawn Middle's principal, making him the highest-ranking on-campus official.  Tramene Maye was the school's assistant principal.

One day after school, K.R. and her stepsister were walking off the Southlawn Middle campus when three boys grabbed K.R. and dragged her into an abandoned building.  The court infers from the Second Amended Complaint that the boys were three of K.R.'s fellow Southlawn Middle students.  (*See* Doc. # 33, at 11.)  Stinson does not specify whether the abandoned building was on school property; she simply

---

[1] Stinson argues that her complaint "should not be dismissed unless it appears that [she] can prove *no* set of facts in support of her claim which would entitle her to relief." (Doc. # 40, at 3; Doc. # 41, at 3.)  But the Supreme Court "categorically retired" the "no set of facts" test a decade ago. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714 (11th Cir. 2014) (citing *Twombly*, 550 U.S. at 562–63).  The *Twombly* and *Iqbal* plausibility standard now governs.

4

alleges it was "on the perimeter of the school property." (Doc. # 33, at 8.) But construing the allegations in the light most favorable to Stinson, the court assumes that the building was on campus — inside, not outside, the perimeter. K.R.'s age is not alleged.

K.R.'s stepsister told Assistant Principal Maye what the boys were doing to K.R., and Maye had witnessed the boys grab and drag K.R. According to Stinson, what Maye observed met the Board's definition of bullying and harassment. But Maye did not intervene. Nor did he report the incident to Principal Vaughn. Instead, Maye told K.R.'s stepsister to "go on about her business." (Doc. # 33, at 8.) Two of the boys then gang-raped K.R. while the third boy kept a lookout.

Stinson happened to be on campus at the time. She soon learned about K.R.'s rape and immediately went to discuss it with Principal Vaughn. But Vaughn showed "little concern for K.R." He "pleaded" with Stinson not to call the media. Vaughn also told K.R. that she needed to "love her body," and he remarked that K.R.'s adult figure was like his girlfriend's. (Doc. # 33, at 8–9.) Assistant Principal Maye was in the room when Stinson met with Vaughn.

Principal Vaughn called the police, who "deemed the rape 'consensual sex' and took no further action." (Doc. # 33, at 9.) But otherwise, Vaughn did not investigate or write a report about the rape. Nor did anyone else from Southlawn Middle or the Board investigate or write a report. K.R. did not receive notice of

5

Title IX, of her right to file a grievance, or of any grievance procedures. The school did not discipline the boys. Instead, the boys continued to attend Southlawn Middle without repercussion.

K.R. became depressed and missed seven or eight days of school because of the rape. Yet no one from Southlawn Middle or the Board reached out to her or offered her counseling. One day during K.R.'s absence, Stinson went to Southlawn Middle to pick up K.R.'s schoolwork. While there, she spoke with Principal Vaughn. Vaughn told Stinson that students were saying the three boys had "run a train" on K.R.,[2] and he advised Stinson not to let K.R. return to Southlawn Middle. (Doc. # 33, at 10.) K.R. then transferred to a different public school in Montgomery. But word of the gang-rape traveled to her new school, and students "teased" K.R. about it. Because of the rape, K.R. takes medication and receives mental health treatment. Her grades have dropped. Her social life has declined.

The Board has no policy for addressing Title IX grievances about student-on-student sexual harassment. It does have a general policy for addressing bullying and harassment. That policy requires teachers and staff who witness harassment (including sexual harassment) to document the incident on a certain form and "promptly" notify the principal. (Doc. # 33, at 4, 17.) The principal must then

---

[2] "'Running a train' is a slang expression for a gang rape." *Williams v. Bd. of Regents*, 477 F.3d 1282, 1288 n.3 (11th Cir. 2007).

investigate the incident and write a report. Verified acts of harassment must result in disciplinary or corrective action. (Doc. # 33, at 5.) The school may expel rapists.

According to the Second Amended Complaint, K.R.'s rape was not the first time that Principal Vaughn failed to investigate sexual harassment. The school year before K.R.'s rape, a Southlawn Middle teacher sexually harassed several students. Parents complained to Principal Vaughn. But because the teacher was Vaughn's former fraternity brother, Vaughn did not investigate the allegations or take any other action. Toward the end of the school year, though, the teacher was fired after police arrested him for indecent exposure.

## IV. PROCEDURAL HISTORY

Stinson sued in 2015 (Doc. # 1) and twice amended her complaint (Docs. # 21, 33). Her Second Amended Complaint (Doc. # 33) is now the operative pleading. It has three counts. Count One is against the Board for violating Title IX, 20 U.S.C. § 1681. It is based on Vaughn and the Board's response (or lack thereof) to K.R.'s rape. Count Two is a tort claim against Assistant Principal Maye, in his individual and official capacities, for "negligence/wantonness." It is based on his failure to intervene when he saw K.R. being dragged into the abandoned building, as well as his failure to report what he saw to Principal Vaughn. Count Three is a claim against Principal Vaughn, in his individual and official capacities, for the tort of outrage. It is based on his response to K.R.'s rape, particularly his comments about K.R.'s body.

7

The Board moved to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. # 36.) So did Vaughn and Maye. (Doc. # 34.) Those motions are the subject of this decision.

## V. DISCUSSION

Taking the allegations in the Second Amended Complaint as true, which the court is required to do, a middle-school student was the victim of a horrible act of sexual violence, and her attackers suffered no consequences. Assistant Principal Maye was entrusted with protecting K.R. He could have intervened, but instead he watched as attackers dragged her away. Later, Principal Vaughn told K.R. that she looked like his girlfriend and needed to "love her body."

Even so, a school board is not vicariously liable for everything its teachers and administrators do. To the contrary, the standard for holding a school board liable under Title IX is "rigorous and hard to meet." *Hill v. Cundiff*, 797 F.3d 948, 975 (11th Cir. 2015). The question is whether Stinson has alleged enough facts to allow the court to reasonably infer that the Board is liable. For the reasons below, Stinson has not met that burden. The Board's motion to dismiss is therefore due to be granted. And with no federal-law claim on which relief can be granted, the court declines to exercise supplemental jurisdiction over the tort claims against Principal Vaughn and Assistant Principal Maye. A state court should be the one to address those claims in the first instance.

## A.     Title IX

Title IX is a federal statute that prohibits gender discrimination in education.[3] It provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).  Sexual harassment, including sexual assault, is a form of gender discrimination under Title IX.  *Williams v. Bd. of Regents*, 477 F.3d 1282, 1293 (11th Cir. 2007).

Title IX does not expressly allow students to sue school boards.  But the Supreme Court has penciled a private right of action into the statute.  *See Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 76 (1992); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979).  So in certain narrow circumstances, a school board may be liable for damages if it inadequately responds to student-on-student sexual harassment.  *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).[4]

There are five elements of a successful Title IX claim based on student-on-student sexual harassment.  *See Hill*, 797 F.3d at 970.  To survive the Board's motion to dismiss, Stinson must plausibly allege that all five elements are met.  First, the

---

[3] The statute has a few exceptions, *see* 20 U.S.C. § 1681(a)(1)–(9), but none apply here.

[4] "Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations."  *Williams*, 477 F.3d at 1300 (citing *Hartley ex rel. Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)).  Any Title IX claim against Vaughn or Maye is therefore due to be dismissed.

Board must receive federal funding. *Id.* Second, the harassment K.R. experienced must have been "severe, pervasive, and objectively offensive." *Id.* at 972. Third, an "appropriate person" at the school must have had "actual knowledge" of the harassment. *Id.* at 971. Fourth, the Board must have been "deliberately indifferent" to the harassment. *Id.* at 973. And fifth, the harassment must have "effectively barred" K.R. from accessing an educational opportunity or benefit. *Id.* at 975 (cleaned up).

The fourth element — deliberate indifference — is the most important element here. Under the deliberate indifference standard, the Board is liable only if its actions were "clearly unreasonable in light of known circumstances." *Davis*, 526 U.S. at 648. The Board must also, "at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Id.* at 645 (cleaned up). Deliberate indifference demands more than mere negligence, *see id.* at 649, and it cautions courts against "second-guessing the disciplinary decisions made by school administrators," *id.* at 648. The test is "exacting," "rigorous," and "hard to meet." *Hill*, 797 F.3d at 975; *Doe v. Sch. Bd. of Broward Cty.*, 604 F.3d 1248, 1259 (11th Cir. 2010). In essence, deliberate indifference amounts to "an official decision by the [school board] not to remedy the violation." *Davis*, 526 U.S. at 642 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

The court finds that Stinson has not adequately alleged that the Board was

deliberately indifferent to sexual harassment. To be sure, the Board's alleged response fell below what other school boards might have done. *See, e.g.*, *Carabello v. N.Y. City Dep't of Educ.*, 928 F. Supp. 2d 627, 642 (E.D.N.Y. 2013); *Wilson v. Beaumont Indep. Sch. Dist.*, 114 F. Supp. 2d 690, 693 (E.D. Tex. 2001). But neither is this a case in which the Board did nothing. *See Davis*, 526 U.S. at 654 (noting the school board there "made no effort whatsoever to investigate or to put an end to the harassment"). Instead, the Board may use Principal Vaughn's call to the police as a defense. The police "deemed the rape 'consensual sex' and took no further action." (Doc. # 33, at 9.) That finding keeps the Board from being liable here.

The court assumes the police reached the wrong conclusion. But even then, Stinson does not allege that the police investigation was inadequate. *See Rex v. W. Va. Sch. of Osteopathic Med.*, 119 F. Supp. 3d 542, 551 (S.D. W. Va. 2015) (finding deliberate indifference where school allegedly "engaged in the investigation with the intention of minimizing the incident, protecting the school's reputation, and putting the incident behind the institution"). Nor does she allege that Vaughn waited too long to call the police. Nor does she allege that Vaughn called the police knowing that officers would reach the wrong conclusion. *Cf. Doe v. Bibb Cty. Sch. Dist.*, 126 F. Supp. 3d 1366, 1378 (M.D. Ga. 2015), *aff'd*, 688 F. App'x 791, 798 (11th Cir. 2017) (per curiam). Nor does she allege that the police investigation, which resulted in an affirmative finding of "consensual sex," was "inconclusive." *See Broward*

*Cty.*, 604 F.3d at 1262 (stating that if an investigation is "inconclusive," schools may have to take "informal corrective action in an abundance of caution").

Instead, the only fair reading of the Second Amended Complaint is that Vaughn called the police the afternoon of the rape. The police then determined that no rape had occurred. Again, it is assumed the police got it wrong. But the relevant inquiry is not whether the investigation reached the right conclusion, but whether the Board was deliberately indifferent. *Cf. Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1285 (11th Cir. 2005) (stating "the relevant inquiry is not whether the measures taken were effective in stopping discrimination") (citing *Davis v. DeKalb Cty. Sch. Dist.*, 233 F.3d 1367, 1375 (11th Cir. 2000)). And once the police cleared the boys of rape, it was not clearly unreasonable for the Board to act as if they had no further obligation to report or investigate the rape claim.

Stinson's counter-arguments are not persuasive. First, Stinson alleges that Principal Vaughn broke school policy when he failed to write a report or conduct his own investigation. She also points out that the Board failed to provide counseling and did not discipline the three boys. But none of that makes the Board deliberately indifferent given that the police found that K.R. had not been raped.

Second, Stinson relies on *Williams v. Board of Regents*, 477 F.3d 1282. That case is distinguishable. In *Williams*, a university knew that a particular student-athlete had harassed women at other schools, but it still recruited the athlete to play

12

on the basketball team. The athlete then coordinated a gang rape in his dorm room. The victim called the police, and a grand jury soon indicted the rapists. *Id.* at 1288–90. Yet the university held no disciplinary hearing for nearly a year. *Id.* at 1296. This case is the inverse of *Williams*. There is no allegation that the Board knew that K.R.'s attackers had harassed other students. It was Vaughn, not Stinson or K.R., who called the police. And the police investigation contradicted K.R.'s story rather than giving the Board a reason to believe her.

Third, Stinson alleges that Vaughn showed "little concern" for K.R. and that he made comments about her body. But Vaughn still called the police. That he made offensive comments along the way "does not transform the Board's reasonable response into deliberate indifference." *GP ex rel. JP v. Lee Cty. Sch. Bd.*, 737 F. App'x 910, 916 (11th Cir. 2018).

Fourth, Stinson cites the Board's lack of a Title IX policy and the violations of the Board's harassment policy. But the mere failure to obey a policy "does not establish the requisite actual notice and deliberate indifference." *Gebser*, 524 U.S. at 291–92. Also, "the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX." *Id.* at 292. By extension, defects in notifying K.R. of grievance procedures do not constitute deliberate indifference under the circumstances.

Fifth, Stinson alleges that Southlawn Middle students said the three boys had

13

"run a train" on K.R. She also alleges that students at her new school "teased" her about the rape.[5] But at that point, the police had already determined that K.R. was not raped. And though gossip can be factual, it is often fiction. Given the police investigation and the unreliability of hallway chatter, the failure to investigate or report based on what other students were saying did not constitute deliberate indifference. Vaughn did tell Stinson about the gossip, and he advised her to change schools. But that does not mean Vaughn believed the gossip; he could have been trying to protect K.R. from false rumors. *See Wilson*, 114 F. Supp. 2d at 693.

Finally, Stinson alleges that Vaughn has a history of indifference because he failed to investigate other complaints. But those complaints were about a teacher who harassed students. They were about inappropriate touching, comments, and requests — not rape. There is no allegation that teacher did anything in the abandoned building. And this time around, Vaughn called the police. So this case is not like *Williams*, 477 F.3d at 1290, or *Hill*, 797 F.3d at 959–61, where the school had prior knowledge of harassment by the same individual. Under the facts alleged, Vaughn's prior indifference does not save Stinson's complaint.

Today's decision in no way condones what Stinson says the Board, Vaughn, and Maye did. But as for Title IX liability, Stinson does not adequately allege that

---

[5] Teasing and name-calling are not independently actionable under Title IX. *Davis*, 526 U.S. at 652; *cf. Hawkins v. Sarasota Cty. Sch. Bd.*, 322 F.3d 1279, 1289 (11th Cir. 2003).

the Board was deliberately indifferent to student-on-student sexual harassment. One might think that deliberate indifference is too stringent of a test.[6] But the Supreme Court adopted that "high standard," *Davis*, 526 U.S. at 643, and it must be followed. The Board's motion to dismiss is thus due to be granted.

B. <u>**Supplemental Jurisdiction**</u>

The court now turns to the claims against Principal Vaughn and Assistant Principal Maye. Stinson sued Vaughn for the tort of outrage, also known as the intentional infliction of emotional distress. That claim is based mostly on Vaughn's comments about K.R.'s body. Stinson sued Maye for negligence and wantonness based on his failure to protect K.R. and his failure to report that she was harassed.

But federal courts have limited jurisdiction. There is never federal-question jurisdiction over common-law claims. 28 U.S.C. § 1331. And because all parties are from Alabama, diversity jurisdiction is impossible here. *Id.* § 1332. So if the court has jurisdiction over the claims against Vaughn and Maye, it must be supplemental jurisdiction. *Id.* § 1367(a).

If Stinson had a valid Title IX claim, there would be supplemental jurisdiction over her common-law claims; her claims all "arise out of a common nucleus of operative fact." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th

---

[6] *See* Catharine A. MacKinnon, *In Their Hands: Restoring Institutional Liability for Sexual Harassment in Education*, 125 Yale L.J. 2038, 2068 (2016) (criticizing the deliberate indifference standard because it is "easy for schools to satisfy, including on motions to dismiss").

Cir. 2006). But where, as here, a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c)(3). Stinson's common-law claims raise difficult and important issues of Alabama law that a state court should address in the first instance. So to promote judicial economy and comity, the court declines to exercise supplemental jurisdiction. Stinson may refile those claims in state court. *See* 28 U.S.C. § 1367(d).

## VI. CONCLUSION

For the reasons above, it is ORDERED that:

1. The Board's Motion to Dismiss Count One (Doc. # 36) is GRANTED with prejudice.

2. Stinson's common-law claims are DISMISSED for lack of jurisdiction without prejudice.

3. Vaughn and Maye's Motion to Dismiss (Doc. # 34) is DENIED as moot.

4. The motion for a status conference (Doc. # 47) is DENIED.

5. This case is DISMISSED.

DONE this 5th day of February, 2019.

/s/ W. Keith Watkins<br>
UNITED STATES DISTRICT JUDGE