IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KYRA ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-924-WKW |
| | ) | [WO] |
| MONTGOMERY COUNTY | ) | |
| BOARD OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On November 18, 2020, Kyra Robinson ("Robinson") filed a third amended complaint against Defendants Tramene Maye ("Maye"), Rafiq Vaughn ("Vaughn"), and the Montgomery County Board of Education (the "Board"). (Doc. # 69.) Robinson brings three counts in her complaint: (1) a Title IX claim against the Board; (2) a state-law negligence/wantonness claim against Maye in his individual capacity; and (3) a state-law intentional infliction of emotional distress ("outrage") claim against Vaughn in his individual capacity.[1] The Board has answered Robinson's complaint. (Doc. # 70.) Before the court is Maye's and Vaughn's Motion to Dismiss (Doc. # 79), which is fully briefed (Docs. # 80, 83, 85). In their

---

[1] Robinson has voluntarily dismissed her official capacity claims against Maye and Vaughn. (*See* Doc. # 83, at 5 (explaining that she has "voluntarily dismiss[ed] the [§] 1983 claims brought against Vaughn and Maye in their officials capacities, leaving only the state law claims against them in their individual capacities . . .").)

motion, Maye and Vaughn only seek to dismiss Robinson's state-law claims. After careful consideration of the arguments of counsel, the applicable law, and the facts, the court finds that the motion to dismiss is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over Robinson's Title IX claim pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights jurisdiction), and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367. Personal jurisdiction and venue are not contested.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The

well-pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true. *Id*. (citation omitted).

### III. BACKGROUND

Because this opinion assumes the parties' familiarity with the procedural history and record, the court will only briefly outline the facts underlying Robinson's state-law claims against Maye and Vaughn. On October 24, 2014, Robinson (then a student at Southlawn Middle School) "was walking off of the Southlawn Middle School campus at the end of the school day when a group of three boys grabbed her and dragged her into an abandoned building on the perimeter of the school property." Robinson's stepsister, who had been walking with her at the time, informed Maye (then assistant principal of Southlawn Middle School) of what had just happened. Maye did not take any action, instead telling Robinson's stepsister to "go on about her business." According to Robinson, Maye witnessed the three boys grabbing and dragging her into the abandoned building. In the abandoned building, two of the boys gang raped Robinson while the third kept a lookout. (Doc. # 69, at 7–8.)

Robinson's mother, who happened to be on Southlawn's campus that day attending a parent teacher conference, soon learned of her daughter's rape. She, along with Robinson, immediately went to discuss it with Vaughn (then principal of Southlawn Middle School). During the meeting, Vaughn showed "little concern for Robinson." He pleaded with Robinson's mother not to call the media. To make

matters worse, Vaughn told Robinson that "she needed to love her body," and he remarked that Robinson had an adult figure like his girlfriend's.  (Doc. # 69, at 8–9.)

Maye and Vaughn make three arguments in support of their motion to dismiss. First, they contend that the doctrine of State absolute immunity bars Robinson's state-law claims against them in their individual capacities.  Second, they assert that they are entitled to state-agent immunity on those same claims.  Third, and finally, Maye and Vaughn argue that Robinson's state-law claims against them fail on the merits.  Each issue will be addressed in turn.

## IV.  DISCUSSION

### A.  <u>State absolute immunity does not apply.</u>

Article I, § 14 of the Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity."  This constitutional provision creates a "nearly impregnable and almost invincible wall that provides the State an unwaivable, absolute immunity from suit . . . in any court." *Ex parte Town of Lowndesboro*, 950 So. 2d 1203, 1206 (Ala. 2006) (citations and quotations omitted).  The Alabama Supreme Court "has noted the general rule that the State immunity provided by § 14 'cannot be circumvented by suing the [State] official or agent individually . . . .'" *Barnhart v. Ingalls*, 275 So. 3d 1112, 1125 (Ala. 2018) (quoting *Milton v. Espey*, 356 So. 2d 1201, 1202 (Ala. 1978)) (alteration in

original).  This general rule, however, is not without exceptions:  State absolute immunity does not apply to "'actions for damages brought against State officials in their individual capacity where it is alleged that they acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State.'"  *Id.* (quoting *Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013)).  To determine "whether an action against a state officer or employee is, in fact, one against the State, a court will consider such factors as the nature of the action and the relief sought."  *Haley v. Barbour Cnty.*, 885 So. 2d 783, 788 (Ala. 2004) (cleaned up).

Here, Maye and Vaughn assert that the nature of Robinson's action against them transforms her individual-capacity claims into an action against the State; hence, such claims are barred by State absolute immunity.  (*See* Doc. # 80, at 6.)  To support their position, Maye and Vaughn rely on the Alabama Supreme Court's *Barnhart* decision.  For the reasons to follow, State absolute immunity bars neither Robinson's negligence/wantonness claim against Maye nor her outrage claim against Vaughn.

In *Barnhart*, the plaintiffs—former employees of the Space Science Exhibit Commission—brought a putative class action against the Commission's officers alleging, among other things, "negligence/wantonness and breach-of-fiduciary-duty claims against the Commission officers in their individual capacities."  275 So. 3d

5

at 1118.  Concerning their negligence claim, the plaintiffs alleged that "the Commission officers 'owe[d] a duty to [Commission] employees to compensate them in accordance with Alabama law . . . .'" *Id*. at 1126 (alterations in the original). As for their breach-of-fiduciary-duty claim, the plaintiffs alleged that "the Commission officers 'owe[d] a fiduciary duty to [Commission] employees to act at all times with utmost care, honesty, loyalty, and fidelity in all of [the Commission's] actions.'" *Id*. (alterations in original).  The officers argued "that they [were] entitled to State immunity with regard to the individual-capacities claims, which" sought money damages from them personally. *Id*. at 1125.

The court noted that at first glance it did not appear that State absolute immunity barred the plaintiffs' claims because they were "seeking personal payment from the Commission officers for tortious misconduct alleged in the individual-capacities claims—and that such a judgment would therefore have no effect on the State treasury . . . ." *Id*. at 1126.  However, the court held, given the *nature of the action*, that "the individual-capacities claims [were], in effect, claims against the State that [were] barred by § 14." *Id*. (alterations added).

The court reasoned that a "necessary element" of both the negligence claim and breach-of-fiduciary-duty claim was "whether, in their individual capacities, the Commission officers owed a duty to the [plaintiffs]." *Id*. (alteration added).  And given how the plaintiffs stated those claims, the court determined that "the duties

6

allegedly breached by the Commission officers were owed to the [plaintiffs] only because of the positions the Commission officers held and that the Commission officers were, accordingly, acting only in their official capacities when they allegedly breached those duties . . . ." *Id*. (emphasis in original) (alteration added).

*Barnhart* arguably applies to Robinson's negligence/wantonness claim against Maye. Specifically, Robinson alleges that "Maye owed a duty to [her] to act in a reasonably prudent manner when executing his duties as an employee of Southlawn Middle to supervise students who pose a real and immediate danger to their fellow students and to protect students from harassment, intimidation, and sexual assault." (Doc. # 69, at 16.) Robinson further alleges that Maye breached this duty when he failed to abide by the Board's harassment reporting policy and when he failed to complete a harassment incident report as required in the Board's handbook. (Doc. # 69, at 17.) These allegations suggest, like *Barnhart*, that Maye owed Robinson a duty by virtue of his position as assistant principal of Southlawn Middle School, thus indicating that he was acting in his official capacity when he allegedly breached that duty.

This superficial similarity notwithstanding, *Barnhart* is distinguishable from the case at bar. The nature of the plaintiffs' negligence/wantonness claim in Barnhart—seeking to hold State officials liable for failure to pay certain benefits—is fundamentally different from the nature Robinson's negligence/wantonness claim

7

here—seeking to hold a school official liable for failing to intervene (or even follow up) after he allegedly witnessed the initial events that ultimately led to the rape of a minor. Given this distinction, the court declines to extend *Barnhart's* holding to the egregious allegations present in this case.

Alternatively, *Barnhart* does not govern Robinson's negligence/wantonness claim against Maye because he arguably had a duty, as a private citizen, to protect her from criminal attacks by third persons. This duty is wholly independent from any duty he may have had by virtue of his position as assistant principal.

"As a general rule, in the absence of special relationships or circumstances, a private person has no duty to protect another from a criminal attack by a third person." *Parham v. Taylor*, 402 So. 2d 884, 886 (Ala. 1981), *overruled on other grounds by Lathan Roof Am., Inc. v. Hairston*, 828 So. 2d 262 (Ala. 2002); *see also New Addition Club, Inc. v. Vaughn*, 903 So. 2d 68, 73 (Ala. 2004) ("It is the general rule in Alabama that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person." (citation omitted)). "'Special circumstances' arise when the defendant 'knew or had reason to know of a probability of conduct by [a third person] that would endanger the plaintiff.'" *New Addition Club, Inc.*, 903 So. 2d at 73. As the court explained in *New Addition Club*, three requirements exist for special circumstances:

> Alabama law requires a plaintiff to show three elements to establish a duty that would be the basis for a cause of action such as the one

8

>  presented in this case . . . . First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed 'specialized knowledge' of the criminal activity. Third, the criminal conduct must have been a probability."

*Id*. Here, special circumstances exist. On the facts pleaded, Maye had knowledge of an extraordinary danger to Robinson when he witnessed events demonstrating that third party criminal acts were about to occur. Even if Maye harbored doubts about what he witnessed, any such reservations should have been removed when Robinson's stepsister informed him about what was happening.

Turning to the nature of Robinson's outrage claim against Vaughn, *Barnhart* clearly does not apply. Unlike her negligence/wantonness claim, Robinson's outrage claim does not require her to show that Vaughn owed her a duty of any sort. *See Hill v. Cundiff*, 797 F.3d 948, 983 (11th Cir. 2015) ("Under Alabama law, the tort of outrage requires the plaintiff to show '(1) the actor intended to inflict emotional distress, or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) that the distress was severe.'") (quoting *Harris v. McDavid*, 553 So. 2d 567, 569–70 (Ala. 1989)). In other words, Robinson's outrage claim is not predicated on any duty that Vaughn owed her arising from his official position as principal of Southlawn Middle School. Absent such a duty, the nature of Robinson's action against Vaughn makes clear that her outrage claim is not effectively against the State.

9

Based on the foregoing, State absolute immunity does not bar Robinson's state-law claims against Maye and Vaughn.[2]

## B. **State-agent immunity does not apply.**

With State absolute immunity off the table, Maye and Vaughn assert that state-agent immunity shields them from Robinson's claims. (Doc. # 80, at 11.) Robinson counters, arguing that Maye is not entitled to state-agent immunity because he acted beyond the scope of his authority and that Vaughn is not entitled to state-agent immunity because his conduct was willful and malicious. (Doc. # 83, at 7.) On a motion to dismiss, Robinson has the better argument.

The Eleventh Circuit has explained that

> [u]nder Alabama law, '[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities.' *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002). The Alabama Supreme Court has established a burden-shifting framework for application of the state-agent immunity test. *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452, 454–55 (Ala. 2006). A state agent initially bears the burden of demonstrating that she was acting in a discretionary function that would entitle her to immunity. *Id*. If the state agent makes such a showing, the burden shifts to the plaintiff to show the state agent 'act[ed] willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.' *Ex parte Cranman*, 792 So. 2d 392, 402 n.13 (Ala. 2000).

---

[2] A judgment in Robinson's favor against Maye and Vaughn in their individual capacities "would . . . have no effect on the State treasury" because she is "seeking personal payment from" them for their allegedly tortious misconduct. *Barnhart*, 275 So. 3d at 1126.

10

*Hill*, 797 F.3d at 980–81 (first alteration added).  Importantly, "a motion to dismiss is typically not the appropriate vehicle by which to assert State-agent immunity and normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery."  *Ex parte Wilcox Cnty. Bd. of Educ.*, 285 So. 3d 765, 779 (Ala. 2019) (cleaned up).  "This is so because the question whether a State agent was acting willfully, maliciously, fraudulently, in bad faith, or [beyond his or her authority] is generally fact specific."  *Id*. (cleaned up).

Beginning with Maye's and Vaughn's initial burden of demonstrating that they were acting in a discretionary function that would entitle them to state-agent immunity, they contend that at all material times, as alleged in the complaint, they were acting within the scope of their employment and exercising their judgment in the administration of their duties as school officials.  (Doc. # 80, at 13.)  Maye's and Vaughn's argument is sound as to their initial burden because Alabama Supreme Court precedent "provides State-agent immunity for individuals who are exercising judgment in the discharge of duties imposed by statute, rule, or regulation in educating students."  *Ex parte Trottman*, 965 So. 2d 780, 783 (Ala. 2007) (cleaned up).  And, "[e]ducating students includes not only classroom teaching, but also supervising and educating students in all aspects of the educational process."  *Id*.  Thus, Maye and Vaughn have satisfied their initial burden of demonstrating that they

were acting in a discretionary function, and Robinson makes no argument otherwise. The burden shifts back to Robinson to show that an exception to state-agent immunity applies.

As mentioned above, Robinson contends that Maye is not entitled to state-agent immunity because he acted beyond his authority. "A State agent acts beyond authority and is therefore not immune when he or she fails to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist." *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003) (cleaned up). Here, Robinson argues that Maye acted beyond his authority when he violated the Board's policies in the following ways: (1) failing to report the harassment he witnessed to Vaughn; (2) failing to complete an incident harassment form; and (3) failing to intervene—or even make a 911 call—when he witnessed the three attackers grab and drag Robinson into an abandoned building. (Doc. # 83, at 6.) Robinson further alleges that Maye was *required* to follow these policies, illustrating that Maye lacked discretion in implementing them. (Doc. # 69, at 17); *see also Ex parte Monroe Cnty. Bd. of Educ.*, 48 So. 3d 621, 628 (Ala. 2010) (holding that the defendant teacher was not entitled to summary judgment based on state-agent immunity because she did not enjoy discretion in implementing the county board of education's corporal punishment policy).[3] Maye's failure to intervene after he witnessed the attack on

---

[3] The record does not contain a copy of the Board's sexual harassment reporting policies.

12

Robinson; his failure to report the attack; and his failure to document the attack all indicate that he acted beyond his authority.  And though Robinson does not argue it, a jury clearly could find Maye acted willfully or even maliciously.  Thus, he is not entitled to state-agent immunity at this stage of the proceedings.

Concerning Vaughn, Robinson highlights that her "state law claim against [him] is for intentional infliction of emotional distress arising from the inappropriate and insensitive comments he made to [her] immediately after she was gang raped." (Doc. # 83, at 7 (alteration added).)  Indeed, Robinson alleges in her complaint that Vaughn's conduct "was intentional and/or reckless, extreme and outrageous and utterly intolerable in a civilized society."  (Doc. # 69, at 18.)  Vaughn's alleged conduct, construed in the light most favorable to Robinson, is sufficient to preclude the application of state-agent immunity at the motion to dismiss stage because it reasonably infers that Vaughn acted either willfully or maliciously.  Accordingly, Vaughn is not entitled to state-agent immunity at this time.  *See Ex parte Ala. Dep't of Youth Servs.*, 880 So. 2d 393, 405 (Ala. 2003) (holding that, at the motion to dismiss stage, the defendant was not entitled to state-agent immunity on the plaintiffs' claims, including one for outrage, because "the plaintiffs' state-law claims

---

The absence of these policies—which undoubtedly will be the subject of discovery—from the record provides additional support for the finding that Maye is not entitled to state-agent immunity at the motion to dismiss stage.

against [the defendant] expressly allege[d] that his conduct was either malicious, willful," or intentional).

Of course, the above findings do not prevent Maye and Vaughn from reasserting their state-agent immunity defense at summary judgment on undisputed facts after appropriate discovery has taken place.

### C. Robinson states a claim for negligence/wantonness.

Under Alabama law, a plaintiff must prove the following to establish negligence and wantonness:

> To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury . . . . To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains . . . .

*Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017) (cleaned up). Here, Maye's only argument concerning the merits of Robinson's negligence/wantonness claim against him centers on the duty element. Specifically, he asserts that he had no duty to protect Robinson from third party criminal acts. (Doc. # 80, at 10.) Maye's reliance on the general rule that a defendant does not owe a duty to protect a plaintiff from third party criminal acts misses the mark because, as previously discussed, special circumstances existed that created a duty for Maye to protect Robinson from her attackers. *See supra* at 8–9. These special circumstances include Maye's witnessing

Robinson's attackers grab and drag her into a building and Robinson's stepsister alerting Maye to the situation as it was happening. Maye chose to do nothing to help Robinson despite possessing knowledge that criminal activity was taking place.[4] Instead, he merely told Robinson's stepsister to "go on about her business," and he did likewise. Thus, Maye's motion to dismiss for failure to state a claim is due to be denied because Robinson's allegations are sufficient to create a duty—under the special circumstances of this case—for Maye to at least attempt to protect Robinson from third party criminal conduct.

### D. Robinson states a claim for outrage.

Vaughn also argues that Robinson "fails to allege facts sufficient to establish" that he "engaged in conduct which supports a cause of action for" outrage. (Doc. # 80, at 11.) The court disagrees.

As mentioned above, "[u]nder Alabama law, the tort of outrage requires the plaintiff to show (1) the actor intended to inflict emotional distress, or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) that the distress was severe." *Hill*, 797 F.3d at 983 (citation and quotations omitted). True, the Alabama Supreme Court has explained that "[t]he tort of outrage

---

[4] The court is acutely aware that the facts alleged in the complaint may not be supported by the evidence. But taken as true, the allegations against Maye are more outrageous than those against Vaughn.

15

is an extremely limited cause of action" and "is viable only when conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Little v. Robinson*, 72 So. 3d 1168, 1172–73 (Ala. 2011) (quotations and citations omitted). The tort of outrage "does not recognize recovery for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. at 1172 (quotations and citations omitted). There was nothing trivial about Vaughn's words or attitude. Robinson's allegations here demonstrate that Vaughn's comments to her, and the context in which he made them, were outrageous in character and extreme in degree; they amounted to much more than a mere insult or indignity.

Robinson alleges that on the day she was raped, she and her mother went to Vaughn's office to inform him about what happened. Vaughn "exhibited little concern for Robinson and instead pleaded with [her mother] to refrain from calling the media." (Doc. # 69, at 8.) Vaughn then proceeded to tell Robinson "that she needed to 'love her body,'" and that she "had more of an adult body similar to [his] girlfriend's body." (Doc. # 69, at 8–9.) Vaughn chose to make these obscene comments—both of which minimize and appear to condone the significant trauma that Robinson experienced—to a middle school aged student who was in his office informing him that she was just violently sexually assaulted by other students.

Following the incident, Robinson "fell into a deep depression" and missed more than a week of school. (Doc. # 69, at 9.)

These allegations establish, at the motion to dismiss stage, that Vaughn's conduct toward Robinson was "so outrageous in character and extreme in degree as to go beyond all possible bounds of decency" and should "be regarded as atrocious and utterly intolerable in a civilized society." *Little*, 72 So. 3d at 1172–73 (Ala. 2011). Accordingly, Vaughn's motion to dismiss for failure to state a claim is due to be denied.

## V.  CONCLUSION

Accordingly, it is ORDERED as follows:

(1) Maye's and Vaughn's motion to dismiss (Doc. # 79) is GRANTED as to Robinson's state-law claims against them in their official capacities.

(2) Maye's motion to dismiss (Doc. # 79) is DENIED as to Robinson's negligence/wantonness claim.

(3) Vaughn's motion to dismiss (Doc. # 79) is DENIED as to Robinson's outrage claim.

DONE this 28th day of July, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE